## Good, Garnishee of Dickinson, *versus* Grant *et al.*

1. P. borrowed $1000 from S. and conveyed to .him land as security. W. recovered judgment against P. in January 1869. S. afterwards conveyed the land to G., who with P.'s consent gave notes to S. for $1100, part of the consideration. These notes being unpaid, W. alleging the money due by G. belonged to P., issued an attachment execution against P., making G. garnishee ; he paid the money into court and pleaded " *nulla bona.*" *Held*, that by paying the money into court G. admitted he owed it ; the contest was then between W. and S., the issue should have been formed and tried between them and G. relieved from further costs.

2. The question was whether S. owed P., and the transactions between them were evidence as they would be in a suit by P. against S.

3. An attaching creditor occupies no higher position than his debtor.

4. The fact that W.'s judgment was entered before the sale to G. gave W. no exclusive equity by reason of its lien, so as to preclude inquiry into distinct transactions between P. and S.

5. In attachment the right of the plaintiff to recover does not depend on lien, but upon indebtedness merely.

6. To pay interest beyond the legal rate is not necessarily fraudulent as to creditors.

7. Interest at ten per cent. was paid by P. to S. in 1870, the attachment was issued in 1872. *Held*, that it was too late for P. to recover it back, and the excess could not be recovered in the attachment by W.

March 26th 1875.    Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.    WILLIAMS, J., at Nisi Prius.

[Good v. Grant.]

Error to the Court of Common Pleas of *Clinton county:* Of July Term 1873, No. 78.

The proceeding in this case was an attachment execution, issued February 22d 1872, at the suit of P. T. Dickinson, to the use of William G. Grant & Son, against Peter Dickinson, with clause of scire facias to George S. Good as garnishee. The judgment on which the attachment was issued was entered January 30th 1869.

Samuel Dickinson, on the 7th of June 1870, conveyed to Good, the garnishee, a lot of ground in the city of Lockhaven, and took judgment-notes from Good for part of the consideration; judgments on these notes were entered against Good in favor of Dickinson. Good paid part of the amount as it became due; the plaintiffs alleging that the money secured by the notes was in fact due to Peter Dickinson, the defendant, issued this attachment execution. The garnishee on the 11th of March 1872, paid the remainder of the money into court, and afterwards pleaded *nulla bona.*

This attachment execution was tried May 21st 1873, before Mayer, P. J., for the purpose of determining whether any portion of the money in court belonged to Peter Dickinson.

For plaintiffs Good testified that he made a verbal bargain with Peter Dickinson for the lot for $1500. Peter then owed witness about $400; this was taken out of the consideration money, and he was to pay the $1100 remaining to Samuel Dickinson. At the time of the bargaining for the lot, Peter represented that it was owned by Samuel.

Samuel Dickinson testified that Peter had sold to him the lot and conveyed it by deed dated April 27th 1865, and delivered in July; witness lent to Peter $1000 in October 1864, for which Peter gave his note at four months, and the lot was conveyed to witness as collateral security for the money lent. When this note became due it was renewed for six months more; at the end of that time, August 1st 1865, another note drawn by Peter Dickinson and P. T. Dickinson, payable in one day, for $1024.15, was given to witness for the second $1000 note; it was agreed that Peter should pay interest at the rate of 10 per cent. per annum for the $1000 loan. Witness was to receive the $1100, the balance of the purchase-money; Peter gave witness a note for the $400, which had been deducted from the purchase-money as owing to Good; the balance of the purchase-money, after deducting the $400, would not pay witness the amount of his loan to Peter.

The garnishee made the following offers of evidence, which were all rejected, and several bills of exception sealed:

"To prove, that on the 1st of July 1870, in addition to the other indebtedness of Peter Dickinson to Samuel Dickinson, the said Peter Dickinson was indebted to Samuel Dickinson in the sum of $400, with interest from July 15th 1857, and for which

[Good *v.* Grant.]

Samuel Dickinson held the note of Peter Dickinson, and which is still unpaid.

"To prove that, on the 1st of July 1870, Peter Dickinson was indebted to Samuel Dickinson in the amount of $111, borrowed of Samuel Dickinson in 1869, and which amount was in addition to his former indebtedness, and which is still unpaid.

"To prove that when the deed was made from Samuel Dickinson to George S. Good, garnishee, a statement of the purchase-money received by Samuel Dickinson was credited upon the note he held against Peter Dickinson and P. T. Dickinson, and credited by the hand of Peter Dickinson, according to previous agreement with Samuel Dickinson, in first deducting from the amount of the purchase-money 10 per cent. interest on the loan from October 1864; and that at the time Samuel Dickinson did not know that there was a judgment against Peter Dickinson anywhere.

"To prove that Samuel Dickinson, in taking care of this lot of ground, and selling the same to George S. Good, incurred expenses to the amount of $50."

The defendants gave in evidence the following statement, made by Peter Dickinson, of the transactions as to the loan by Samuel Dickinson to him :

"S. D. held note of P. D. & P. T. D. for  -  $1024.15
On which we have agreed to pay 10 per cent.
　　Say 5 years, 5 months interest,　-　-　-　554.80
　　Endorsed on his note,　-　-　-　-　-　545.20　$1100.00
　　Interest cast up 1st July 1870."

The court, after referring to the sale to Good, the consideration, &c., charged :—

* * * "When the money became due, the court directed the garnishee to pay the money into court; and this attachment in execution is now being tried for the purpose of determining whether any portion of the money paid into court is the property of said Peter Dickinson. It appears from the testimony of Samuel Dickinson that a deed was executed and delivered to him by Peter Dickinson, for this lot of ground, to be held as collateral security for the sum of one thousand dollars loaned by the former to the latter, in the year 1864. This, in law, would amount to nothing more than a mortgage. The judgment of Grant & Son was entered prior to the sale by Samuel Dickinson to Good, and would be a lien upon any interest that Peter Dickinson might have in the lot of ground. Out of a sale of the lot Samuel Dickinson could not claim more than the $1000, loaned by him to Peter Dickinson, with interest from October 1st 1864 to July 1st 1870. After allowing to Samuel Dickinson the full amount of his claim, viz. : one thousand dollars and the interest, there would remain a balance, out of the proceeds of the sale of the lot, of $158.17. We are of the opinion that the

[Good v. Grant.]

plaintiffs are entitled to recover this amount, and we therefore instruct the jury to find a verdict for the plaintiffs for the sum of $158.17."]

The verdict was for the plaintiffs for $158.17.

The garnishee took a writ of error. He assigned for error the rejection of the offers of evidence and the part of the charge in brackets.

*C. G. Furst*, for plaintiff in error.—Garnishee must make the same defence which defendant in the execution could make or he will be responsible: Baldy v. Brady, 3 Harris 108. Samuel Dickinson's conveyance to Good may be treated as an assignment of the mortgage; not recording a defeasance makes an estate absolute to every one except the original parties or their heirs : Harris v. Phillips's Academy, 12 Mass. R. 466 ; Jaques v. Weeks, 7 Watts 279. An attachment execution derives no power from the lien of the judgment; it may issue after the lien has expired : Ogilsby v. Lee, 7 W. & S. 445. Proceeding by attachment affirmed the sale : Bank v. Macalester, 9 Barr 479. The plaintiffs in the attachment stood in the shoes of their debtor as against the garnishee : Baldwin's Estate, 4 Barr 248 ; Riddle v. Etting, 8 Casey 413 ; Woodhouse v. Commonwealth Insurance Co., 4 P. F. Smith 309 ; Dougherty v. Hunter, Id. 383 ; Myers v. Baltzel, 1 Wright 493.

*C. J. McCormick*, for defendants in error.—The conveyance to Samuel Dickinson being only a mortgage, it was an unrecorded mortgage, and secured to its holder no greater benefits than an ordinary unrecorded mortgage would secure to him. This being true, the moment that Grant & Son's judgment was entered it became a lien prior to that of the Samuel Dickinson unrecorded mortgage : Friedley v. Hamilton, 17 S. & R. 70 ; Manufacturers' and Mechanics' Bank v. Bank of Pennsylvania, 7 W. & S. 335.

Mr. Justice MERCUR delivered the opinion of the court, May 11th 1874.

This case seems to have been tried in a very irregular manner. The defendants in error issued an attachment execution against the plaintiff in error as garnishee of Peter Dickinson. At this time Samuel Dickinson held several judgments against Good. He admitted his indebtedness upon them. The court say in their charge, "when the money became due the court directed the garnishee to pay the money into court, and this attachment execution is now being tried for the purpose of determining whether any portion of the money paid into court is the property of said Peter Dickinson." The contest then really was between the defendants in error as attaching creditors of Peter Dickinson as one party, and Samuel Dickinson as the other party. The issue should have been formed

[Good *v.* Grant.]

and tried between them.  By paying the money into court, Good admitted his liability to pay the judgments; although it is said the "court directed" him so to pay it in, we will not assume this direction to have been made without his request.  The garnishee should then have been relieved from further costs.  The contest should have been carried on in form, as it was in fact, between the two parties claiming the fund.  Being then in fact a question between the two claimants of the fund, it raised and directly involved the question, whether Samuel Dickinson was indebted to Peter Dickinson.  The right of the defendants in error to recover depended upon their establishing that Samuel was so indebted. This necessarily led to an inquiry into the business transactions between Peter and Samuel, to ascertain whether, upon the whole, Samuel was indebted to Peter.  As there is no proof of any intentional fraud between Peter and Samuel, the same evidence should have been received as in a suit brought by Peter against Samuel.  The attaching creditor occupied no higher ground than Peter would have done.  The learned judge appears to have thought the attaching creditor possessed peculiar equities arising from the fact that his judgment was entered while there was a right of redemption in Peter; and that this precluded an inquiry into other distinct transactions.  We are not able to see that any such exclusive equities spring from the lien of the judgment.  If the fund in court had been raised by a sheriff's sale of the real estate, then the question of the lien of the judgment would have been important.  In this proceeding by attachment, the right of the defendants in error to recover, does not rest upon the lien, but simply upon the indebtedness.  If the judgment had never been a lien on this land, or if the lien had been lost by lapse of time, the rights of the attaching creditor upon it would have been the same.

To pay interest in excess of the legal rate is not necessarily fraudulent as to creditors.  To enable the party who has paid it to recover back, the statute requires his action to be brought within six months after it was paid.  In an actual good faith transaction between the parties, the attaching creditor has no greater rights than the party paying such excess.  Therefore, if the payment of interest was actually so made in July 1870, this attachment which issued in February 1872, was too late to recover it back. The court therefore erred in instructing the jury to find the excess of interest in favor of the plantiff below.  The errors assigned are sustained.

Judgment reversed, and a *venire facias de novo* awarded.